[No. 34678.   Department Two.   May 12, 1960.]

EINAR GLASER et al., *Appellants*, v. DWIGHT HOLDORF et al.,
*Respondents*.[1]

[1]Reported in 352 P. (2d) 212.

*Wright & Wright,* for appellants.

ROSELLINI, J.—This is an action to foreclose a real estate · mortgage and to recover judgment on the debt for which it was given. The court found that the mortgagors had obtained the land through fraud and ordered cancellation of the mortgage and restoration of the property to Edith Skene, individually and as administratrix of the estate of Graham Skene, deceased. The mortgagees have appealed. The respondents did not file a brief and did not appear for argument.

The transactions which culminated in this action occurred in the following manner:

In 1949, Graham and Edith Skene, an elderly couple who lived on land which they owned on Hood Canal in Mason county, met one Errion and one Holdorf who induced them to deed their property (valued by one appraiser at around $55,000) to Holdorf in exchange for certain oyster lands near Coos Bay, Oregon. Errion and Holdorf represented that the oyster lands were about to be condemned and that the transaction would be very profitable to the Skenes. However, this representation was entirely false, and in fact the Oregon property was practically worthless. The Skenes

made no investigation of the property or of the men with whom they dealt. Mrs. Skene did not discover that fraud had been practiced upon them until 1954, after her husband's death and three years after the property had been mortgaged to the appellants by Holdorf, to secure a loan of $25,000. The Skenes retained three hundred feet of the property and continued to live there.

The appellants met Errion and Holdorf in the early spring of 1951, through their partner in the logging business in Oregon. At the time they were desirous of selling the business, which they valued at approximately $1,000,000, Errion represented that he was a man of considerable experience in investment counseling, tax accounting, and well versed in the logging business and would be able to dispose of their property to their advantage. Like the Skenes, the appellants did not investigate Errion or Holdorf. These very talented confidence men inveigled a loan of $25,000, for which they gave the mortgage involved in this suit. The appellants took the mortgage and made the loan without investigating the state of the title or examining the land. However, a savings and loan association was asked to investigate the value of the security and reported that it was satisfactory.

Thereafter the appellants, in the course of their dealings, became increasingly aware that Errion and Holdorf were not to be trusted. There was evidence that the appellants, as early as March 1952, learned that the land on which they held a mortgage had been obtained through fraud. Thereafter they brought this suit to foreclose the mortgage, and to obtain a personal judgment against the Holdorfs for the amount of the note which it was given to secure. Mrs. Skene was named as a defendant claiming some interest in the property.

In her answer, Mrs. Skene affirmatively alleged that the property was acquired through fraud and that the appellants had knowledge of the fraud and were not bona fide mortgagees in "good faith without notice and with value or consideration." She asked that the deed and mortgage be declared null and void and the latter removed as a lien upon the property.

At the trial, the defendant Dwight Holdorf appeared and admitted that the deed was obtained through fraud. He also admitted the receipt of $25,000 for which the mortgage was given, but claimed that he had no interest in it or in the property and that the transactions were conducted in his name at the direction of Errion, who was the true owner of land and borrower of the funds.

The trial court found:

"No bona fide and real examination of the premises was made by the plaintiffs prior to the alleged note and mortgage, although $25,000.00 was involved, no customary title search was made to ascertain the merchantability of the title, nor was there inquiry to determine that the Skenes were in possession of said property at the time of the alleged mortgage."

The trial court further found that a close relationship existed between the appellants and Errion and Holdorf after the note and mortgage were given; and that they learned of the fraud, but made no inquiry of the Skenes and did nothing about it until this suit was instituted. There was no finding that, with diligence, anything could have been done.

The court found that the consideration for the note and mortgage was paid as alleged. The court concluded that the appellants were not good-faith encumbrancers without notice of existing equities, and declared the mortgage null and void. They were denied judgment against the Holdorfs, and the latter were ordered to deed the property back to Mrs. Skene.

Certain errors are assigned to the findings, and it is also contended that the findings do not support the judgment, there being neither finding nor evidence that the appellants knew of the fraud at the time they took the note and mortgage, and gave consideration therefor.

If the findings are read alone, it would appear that the trial court bottomed its conclusion on the finding that the appellants made no title search and no examination of the premises prior to making the loan and taking the mortgage. However, a reading of the memorandum opinion discloses

that the court did not find that the appellants had either actual or constructive notice of the fraud, but based its conclusion on the holding of *Calvary Cemetery v. Bell*, 181 Wash. 455, 43 P. (2d) 25.

In that case an investor entrusted certain of his funds to an insolvent corporation, which misappropriated them. Subsequently the corporation misappropriated a note and mortgage and assigned it to the investor, without his knowledge, to cover the defalcation. In a suit by the owner of the note and mortgage, this court held that the investor could not avail himself of the fruits of his debtor's fraud, no consideration having passed from him, and he having done nothing in reliance on the assignment. In so holding, this court quoted with approval the following passage from *Atlantic Cotton Mills v. Indian Orchard Mills*, 147 Mass. 268, 17 N. E. 496, 9 Am. St. 698:

" . . . The doctrine is universal, and prevails alike at law and in equity, that a person, though innocent, cannot avail himself of an advantage obtained by the fraud of another, unless there is some consideration moving from himself. It was long ago declared by Lord Mansfield that, 'although a third person shall not be punished for the fraud of another, he shall not avail himself of it. There is no case in the law where that can be done.' "

It will be observed that in that case the defendant (the investor) had not exacted the note and mortgage as security when he placed his funds in the hands of the corporation and that the note and mortgage, which were not the property of the corporation, were assigned to him without his knowledge. In other words, the assignment of the note and mortgage was given without consideration, and the placing of the defendant's funds in the hands of the corporation was done without any expectation of such an assignment, and consequently with no reliance thereon.

Here, we have a very different situation. The appellants advanced $25,000 in exchange for the note and mortgage. There was no direct evidence, and no evidence from which it could be inferred, that they knew that the deed to the land in question had been obtained by fraud when they

made the loan. Their after-acquired knowledge is immaterial. For, once having parted with their money, there was nothing they could do except endeavor to secure its repayment, and it was neither alleged nor shown that they could have succeeded in this. So far as the record discloses, no estoppel was urged nor was the doctrine considered by the trial court. We therefore attach no significance to the finding that the appellants "did nothing" until this suit was brought.

■ A bona fide purchaser for value is one who without notice of another's claim of right to, or equity in, the property prior to his acquisition of title, has paid the vendor a valuable consideration. *Biles-Coleman Lbr. Co. v. Lesamiz*, 49 Wn. (2d) 436, 302 P. (2d) 198; *Peterson v. Paulson*, 24 Wn. (2d) 166, 163 P. (2d) 830.

■ The burden of establishing that a purchaser had prior notice of another's claim, right, or equity, rests upon the one who asserts such prior notice. *Biles-Coleman Lbr. Co. v. Lesamiz, supra*, and cases cited therein.

Are the appellants charged with constructive knowledge because they failed to make a title search or an examination of the premises?

■■ Notice to a purchaser of real estate that parties other than the seller (or encumbrancer) have a claim of interest in the property need not be actual nor amount to full knowledge, but it should be such information as would excite apprehension in an ordinary mind and prompt a person of average prudence to make inquiry; however, a circumstance which would lead a person to inquire is only notice of what a reasonable inquiry would reveal. *Paganelli v. Swendsen*, 50 Wn. (2d) 304, 311 P. (2d) 676.

The record in this case does not disclose whether the Skene-Holdorf deed was recorded, but it is undisputed that the deed was executed and delivered. It may be that a title search would not have revealed the Holdorfs' interest, nevertheless they held and could exhibit a deed manifesting their title. So far as the failure to visit the premises is concerned, such a visit would have disclosed the Skenes' pres-

ence, but according to Mrs. Skene's testimony, at that time she still retained complete confidence in Errion and Holdorf and had no knowledge of their fraud. As far as the record reveals, had they been asked if they claimed an interest in the land, the Skenes would have stated that they had deeded to Holdorf all of their land except the part of the lot on which they lived.

■■ Assuming the rule to be that, in a case such as this, possession of the grantor is notice of his claim of right, and without deciding that the facts show the Skenes to have been in possession of the deeded land, nevertheless their presence could not constitute constructive notice of the fraud whereby they were induced to part with their property. While possession of land may be notice to all persons dealing with it of whatever rights the one in possession claims (and a purchaser may take subject to such claims provided they are well founded), it is notice of such facts only as inquiry of the occupant would disclose. And if the one in possession has no knowledge that he has been defrauded and can give no information showing such fraud, his possession is not notice of the fraud. *Nelson v. Joshel,* 305 Ill. 420, 137 N. E. 389; *Cornell v. Maltby,* 165 N. Y. 557, 59 N. E. 291; *Matesky v. Feldman,* 75 Wis. 103, 43 N. W. 733; 3 Glenn, on Mortgages, 1582, § 389.

■■ There was then no evidence and no finding that the appellants knew any facts at the time they took the mortgage which would arouse their suspicion of the character of the mortgagors, and no evidence that had they examined the state of the title or of the premises, they would have discovered the fraud or facts raising a suspicion thereof. Consequently, Mrs. Skene failed in her burden of proving that the appellants were not good-faith encumbrancers. Having found that the consideration was paid, the court erred in canceling the appellants' mortgage; it also erred in denying the appellants' prayer for personal judgment against the Holdorfs, since their liability was admitted in open court.

The judgment is reversed and the matter remanded with direction to proceed with the mortgage foreclosure.

WEAVER, C. J., FINLEY, OTT, and FOSTER, JJ., concur.

August 10, 1960. Petition for rehearing denied.