[No. 39082.  Department Two.  May 23, 1968.]

DAVID HUDESMAN, *Appellant*, v. PETER J. FOLEY *et al.*, *Defendants*, GEORGE E. SMITH *et al.*, *Respondents.**

*Lycette, Diamond & Sylvester*, by *Lyle L. Iversen*, for appellant.

*Erle W. Horswill* (of *Horswill, Keller, Rohrback, Waldo & Moren*), for respondents.

HAMILTON, J.—Appellant David Hudesman initiated this action seeking specific performance of an earnest-money

*Reported in 441 P.2d 532.

agreement whereby Peter J. Foley and his wife agreed to sell certain real property to appellant's assignor, Kreger Bros., Inc. Appellant alleged that the Foleys, in contravention of appellant's outstanding rights under the earnest-money agreement, had sold the property to a third party, respondents George E. Smith and his wife, who had, in turn, recorded a statutory warranty deed. The Smiths were joined as party-defendants in the action, it being contended that they were not bona fide purchasers and their title to the property was subordinate to the rights of appellant.

After issues were joined, respondents Smith moved for summary judgment dismissing them from the action. In support of the motion were affidavits of Mr. Smith, Mr. Foley, and Mr. Foley's attorneys, Alva E. Long and Douglas F. Albert. In opposition to the motion appellant provided affidavits of Paul F. Kreger, president of Kreger Bros., Inc., and Roger C. Hayden, an officer of Ballard Escrow, Inc., the agency which was to handle the closing of the Foley-Kreger Bros., Inc., transaction. Also before the trial court and considered by it in passing upon the motion for summary judgment were written interrogatories directed to and answered by Mr. Smith and Mr. Foley. After reviewing the pleadings, the affidavits and the answers to the interrogatories, the trial court granted summary judgment dismissing the Smiths from the action. The trial court did not, by oral opinion, memorandum decision, or by the order of dismissal specify the grounds which formed the basis of its action.

On appeal, appellant contends the trial court erred in granting summary judgment because (1) there exist genuine issues of material and conflicting facts to be resolved, and (2) the Smiths could not, as a matter of law, be conclusively held to be bona fide purchasers. Respondents, on the other hand, assert that (a) the Foley-Kreger Bros., Inc., earnest-money agreement terminated before title was conveyed to respondents, and (b), in any event, respondents were conclusively shown to be bona fide purchasers for value.

A summary of pertinent events leading up to the issues framed upon this appeal as gleaned from the affidavits and

pleadings before us may be stated in the following manner: The property involved is approximately 37 acres of unimproved land situated in King County, Washington. During a substantial portion of 1965 title to the property was in litigation between the Foleys and one Madison, the original vendor or his successor, who was pursuing a foreclosure action. The Foleys were in need of cash to effect a settlement of the litigation and clear title to the property. On May 28, 1965, at the behest of Puget Sound Homes, Inc., a realty firm, the Foleys signed an earnest-money receipt and agreement whereby they agreed to sell the property in question to Kreger Bros., Inc., for the sum of $74,000, payable "25 thousand dollars down, including . . . earnest money, & balance cashed out within 3 yrs with interest at 6% per annum." The earnest money was in the form of a $1,000 promissory note payable upon demand, which was deposited with the realty firm. Among other things, the earnest-money agreement provided:

> [T]his transaction contingent on approval of purchaser's finance institution within 45 days.
>
> . . . .
>
> 10. The sale shall be closed in the office of Ballard Escrow Co., Inc., within 90 days after title insurance policy or title insurance company's report is furnished by owner or completion of financing is called for herein, whichever is later. The purchaser and the seller hereby agree to deposit in escrow all instruments and monies necessary to complete the purchase; . . . .

The 45-day period specified for approval of the purchaser's financing institution expired on July 12, 1965, and passed without the Foleys or their attorneys being notified of any action of the financing institution. A title report was, however, furnished to the realty agency on July 22, 1965, and deposited with the escrow agency on August 2, 1965. Nevertheless, on July 27, 1965, the Foleys, by letter from their attorney, Mr. Albert, notified the realty firm and Kreger Bros., Inc., of the lapse of the 45-day period and stated that unless a $25,000 certified check was deposited within 2 days the transaction would be deemed rescinded. Attorney

C. Lee Coulter, on behalf of Kreger Bros., Inc., responded to the Foleys' demand by letter to the realty firm dated July 30, 1965. In his letter Mr. Coulter stated, in substance, that Kreger Bros., Inc., had advised the realtor of the completion of financing, that it did not deem the transaction terminated, that it had 90 days after it received a title report within which to complete the transaction, and that $1,000 cash in lieu of the promissory note was then advanced as earnest money. As a result of this letter, it would appear that the title report, furnished on July 22, 1965, together with the earnest-money agreement, was deposited by the realtor with the escrow agent on August 2nd.

The next pertinent move, revealed by the record before us, appears to have been taken on August 27, 1965, when Mr. Coulter, on behalf of Kreger Bros., Inc., by letter to the escrow agency, Ballard Escrow, Inc., notified that agency of the purchaser's willingness to deposit the sum of $24,000 in escrow, subject to the condition that the Foleys would pay 10 per cent interest thereon if title to the property was not shown to be marketable within 10 days. Seemingly, this condition was predicated upon indications from the Foleys that settlement of the Madison litigation and clearance of title was dependent upon cash being deposited in escrow. In any event, it appears that one of the attorneys for the Foleys was contacted by the escrow agent relative to the proposal and agreed to it, provided the 10-day period for clearance of title be extended to 30 days. This proviso was accepted by Mr. Coulter. Thereafter, on September 16, 1965, the escrow agency prepared and forwarded to one of the attorneys for the Foleys "new" escrow instructions and five copies of a real-estate contract for the Foleys' signatures. The Foleys never signed these documents, and it does not appear that the $24,000 deposit was ever made.

On September 20, 1965, respondents Smith observed the property in question and inquired of the Foleys as to its availability. Mr. Foley informed Mr. Smith that the property was for sale and directed him to contact the Foleys' attorney Mr. Long. This Mr. Smith did, as a result of which he made an offer of $70,000 net to the Foleys for the prop-

erty, which offer, in turn, was reduced to an earnest-money agreement on September 23, 1965. By the terms of this earnest-money agreement Mr. Smith was to deposit up to $40,000 in escrow, or so much thereof as was necessary to clear the Foleys' title. Concerning his preliminary negotiations with attorney Long, Mr. Smith stated in his affidavit:

> Mr. Long said that in the past there had been several squirrely deals, none of which had materialized, and that there had been one Earnest Money Agreement which had expired, and that if I was really interested in purchasing the property I should come up with a fair offer involving cash. He stated that one Madison was attempting to foreclose on the property and that it would take some place between $25,000.00 and $45,000.00 in cash to clear out Madison. I asked Mr. Long what he felt the property would be worth and we discussed values. Mr. Long informed me that the Earnest Money Agreement which had expired was for $74,000.00 and involved a substantial commission. I offered $70,000.00 in cash, net to the Foleys. Mr. Long said he thought this was a fair offer, and accordingly, an Earnest Money was prepared which the Foleys and I signed.

Thereafter, on October 11, 1965, the Foleys' attorney Mr. Albert returned the unsigned Foley-Kreger Bros., Inc., escrow instructions to Ballard Escrow, Inc. In the meantime, Kreger Bros., Inc., had assigned its interest in the earnest-money agreement to appellant, David Hudesman, who, in turn, submitted to the escrow agency a tender of the full purchase price called for in the agreement ($74,000). This was done by way of a letter of commitment from Peoples National Bank dated October 22, 1965. This tender was transmitted by the escrow agency to counsel for the Foleys by letter dated October 26, 1965. The precise response or the form thereof made by the Foleys to this tender is not revealed by the affidavits.

Following this tender, and on October 30, 1965, respondent George Smith met with attorney Long. According to Mr. Smith's affidavit the following exchange of views took place:

> On or about October 30th, it was necessary for me to put the $40,000.00 into escrow to clear up the Madison

suit. At this time Mr. Long and I met at the King County Courthouse. I was naturally somewhat concerned about putting up $40,000.00 and asked Mr. Long's assurance if everything was proper. He assured me it was. He stated that since the Foleys and I had signed the Earnest Money Agreements, several offers had come in on the property for more money, but that he had turned them down because Mr. Foley and I had made a deal. He stated at this time that one of the deals was a Mr. Hudesman, who was trying to reactivate an Earnest Money Agreement from Kreger Brothers, which had expired. I asked him if he was sure this had expired and he said that it had. He said to me that since he felt he would have to be a witness in the Madison case, that he had associated Doug Albert in the matter and if I had any questions in my mind he would call Doug Albert. Accordingly, he called Mr. Albert on the telephone and Mr. Albert assured me that nothing stood in the way of my offer on the property and he also assured me that the $40,000.00 which I was about to place in escrow would more than suffice to clear up the Madison suit. He also stated that the Kreger Brothers' Earnest Money Agreement had expired. I subsequently deposited the $40,000.00 in escrow.

Further expanding upon the content of this conversation with attorney Albert, Mr. Smith, in answer to a written interrogatory stated:

Mr. Albert said that the Kreger Earnest Money Agreement had expired in early July and that subsequently, through an attorney, they had tried to make different deals, some for straight cash but that my Earnest Money had come first. He said that Mr. Hudesman was now trying to offer cash, and that offer and other cash offers coming in were for more money than I had offered. He said that I was not to worry because I had a firm deal.

With the deposit of the $40,000 by the Smiths, title to the property was cleared of the Madison litigation. Thereafter the Smiths executed a mortgage for the balance of the purchase price and a warranty deed, dated November 11, 1965, together with a policy of title insurance was delivered to them. The deed was filed for record on November 12, 1965.

Against this background, two questions arise out of the respective contentions of appellant and respondents. One,

can it be said as a matter of undisputed fact and as a matter of law that the Foley-Kreger Bros., Inc., earnest-money agreement terminated or expired either in July or late October, 1965? Two, can it be said as a matter of undisputed fact and as a matter of law that the Smiths were bona fide purchasers for value at the time of the issuance and delivery of their warranty deed?

Bearing in mind that we have before us only the pleadings, the affidavits, and the written answers to certain interrogatories,[1] we are satisfied that both questions must be answered in the negative. Accordingly, respondents Smith must be reinstated as party-defendants and the cause remanded for trial upon the merits.

In reaching our conclusion, we particularly bear in mind certain rules pertaining to summary judgments. They are summarized in *Balise v. Underwood,* 62 Wn.2d 195, 199, 381 P.2d 966 (1963), as follows:

(1) The object and function of the summary judgment procedure is to avoid a useless trial; however, a trial is not useless, but is absolutely necessary where there is a genuine issue as to any material fact. *Preston v. Duncan,* 55 Wn. (2d) 678, 349 P. (2d) 605.

(2) Summary judgments shall be granted only if the pleadings, affidavits, depositions or admissions on file show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Rule of Pleading, Practice and Procedure 56, RCW Vol. 0; *Capitol Hill Methodist Church of Seattle v. Seattle,* 52 Wn. (2d) 359, 324 P. (2d) 1113.

(3) A material fact is one upon which the outcome of the litigation depends. *Capitol Hill Methodist Church of Seattle v. Seattle, supra; Zedrick v. Kosenski, ante,* p. 50 [62 Wn.2d 50], 380 P. (2d) 870.

(4) In ruling on a motion for summary judgment, the court's function is to determine whether a genuine issue

---

[1] By way of supplementary statement of facts, appellant has sought to introduce for consideration of this court two depositions taken subsequent to the entry of the summary judgment appealed from. It is conceded that these depositions were not before the trial court at the time of the entry of the summary judgment. Accordingly, we cannot and have not considered them in our disposition of the appeal. *American Universal Ins. Co. v. Ranson,* 59 Wn.2d 811, 370 P.2d 867 (1962).

of material fact exists, not to resolve any existing factual issue. *Thoma v. C. J. Montag & Sons, Inc.*, 54 Wn. (2d) 20, 337 P. (2d) 1052.

. . . .

(6) One who moves for summary judgment has the burden of proving that there is no genuine issue of material fact, irrespective of whether he or his opponent, at the trial, would have the burden of proof on the issue concerned. *Preston v. Duncan, supra.*

(7) In ruling on a motion for summary judgment, the court must consider the material evidence and all reasonable inferences therefrom most favorably to the nonmoving party and, when so considered, if reasonable men might reach different conclusions the motion should be denied. *Wood v. Seattle*, 57 Wn. (2d) 469, 358 P. (2d) 140.

(8) When, at the hearing on a motion for summary judgment, there is contradictory evidence, or the movant's evidence is impeached, an issue of credibility is present, provided the contradicting or impeaching evidence is not too incredible to be believed by reasonable minds. The court should not at such hearing resolve a genuine issue of credibility, and if such an issue is present the motion should be denied. 6 Moore's Fed. Prac. (2d ed.) ¶ 56.15(4), pp. 2139, 2141; 3 Barron & Holtzoff, Fed. Prac. and Proc. § 1234, p. 134.

■ Applying the foregoing rules to the first question posed upon this appeal, *i.e.*, whether the pertinent earnest-money agreement, and/or any rights arising thereunder, expired or terminated in either July or October, 1965, we start with the circumstance that the affidavit of Mr. Kreger avers that "financing for this deal was arranged . . . shortly after the earnest money agreement was entered into, and there was never any problem about financing." The truth or falsity of this statement is not, strictly speaking, material at this stage of the proceeding, for as pointed out above the credibility of a witness should not ordinarily be determined on a motion for summary judgment. Assuming then the accuracy of Mr. Kreger's assertion, the next query must be whether the parties, by making their agreement contingent upon "approval of purchaser's financial institution within 45 days," intended, or whether there was

implicit in the language used, a requirement of notification to the Foleys or their attorneys of the financial arrangement prior to the expiration of the 45-day period and, if so, whether such notification was to be or did amount to a condition precedent to the continued efficacy of the agreement. Accepting, arguendo, respondents' argument that such notification was not given and was a condition precedent, we are, however, next confronted with the necessity of ascertaining the effect of the negotiations and actions of the parties following the expiration of the 45 days, particularly as they revolve about the title report, the letter of conditional rescission, and the proffered deposit of $24,000. Did these actions give rise to a waiver of the condition precedent, continue the agreement in effect, revive the agreement, or give rise to a new and different agreement? The issues so raised cannot be fairly and knowledgeably determined upon the basis of the record as it is now before us, and if the trial court undertook to determine them when the matter was before it—which we doubt—it was in error.

The same may be said as to the second aspect of the first question, i.e., whether the agreement expired before appellant's tender of the full purchase price on or shortly after October 22, 1965. In this respect respondents allude to the provisions of paragraph 10 of the earnest-money agreement, supra, wherein it is provided that the transaction would be closed at the escrow agency "within 90 days after title insurance policy or title insurance company's report is furnished by owner or completion of financing is called for herein, whichever is later." With this proviso in mind respondents argue that the title report was furnished on July 22, hence the 90 days expired on October 20, 1965, or 2 days before appellant's tender. This argument, however, overlooks and lays aside the potential import of the negotiations and the actions taken in connection with the Kreger Bros., Inc., tender of the down payment and the attempted establishment of the escrow arrangement in August and September, 1965. Again, as with the first aspect of this question, the record as it presently stands is too indefinite and incom-

plete to permit a determinative application or calculation of the 90-day provision without a trial on the merits.

■ We turn then to the second question, that is, whether upon the record as it now stands, it can be determined as a matter of undisputed fact and as a matter of law that the Smiths were bona fide purchasers for value. In this inquiry we are not now concerned with which party would bear the burden of proof upon this issue at a trial on the merits, for, at this stage—the summary judgment stage —the burden of establishing that there is no genuine issue of material fact rests with respondents.

■ In *Glaser v. Holdorf*, 56 Wn.2d 204, 209, 352 P.2d 212 (1960), we defined a bona fide purchaser as one who

without notice of another's claim of right to, or equity in, the property prior to his acquisition of title, has paid the vendor a valuable consideration. *Biles-Coleman Lbr. Co. v. Lesamiz*, 49 Wn. (2d) 436, 302 P. (2d) 198; *Peterson v. Paulson*, 24 Wn. (2d) 166, 163 P. (2d) 830.

And, in the same case, we pointed out at 209 that:

Notice to a purchaser of real estate that parties other than the seller (or encumbrancer) have a claim of interest in the property need not be actual nor amount to full knowledge, but it should be such information as would excite apprehension in an ordinary mind and prompt a person of average prudence to make inquiry; however, a circumstance which would lead a person to inquire is only notice of what a reasonable inquiry would reveal. *Paganelli v. Swendsen*, 50 Wn. (2d) 304, 311 P. (2d) 676.

■ Furthermore, it is the general rule, applicable to such issues as pertain to the question of whether one is or is not a bona fide purchaser for value, that

where the facts are conceded or uncontroverted, or where there is no evidence on which to base a verdict, or where the evidence is such that only one conclusion may reasonably be drawn therefrom, the question is for the court, and in such a case it is error for the court to submit the question to the jury. However, questions of fact as to which there is a conflict in the evidence, or the evidence is such that different inferences might reasonably be drawn therefrom, are ordinarily for the jury under proper instructions. Thus, the questions of whether

one was an innocent purchaser, bona fides, adequacy of consideration, possession, notice, whether the purchaser was put on inquiry, and whether inquiry would have resulted in notice are ordinarily for the jury. 92 C.J.S. *Vendor & Purchaser* § 374 (1955).

■ The resume of the gleanable circumstances, heretofore outlined, when viewed in a light most favorable to appellant, indicates that at all pertinent times appellant's assignor and appellant were insisting upon the viability of the Foley-Kreger Bros., Inc., earnest-money agreement, together with their willingness, albeit somewhat hesitantly, to comply with its terms.

Respondents, however, assert that Mr. Smith, although being made aware of the earlier earnest-money agreement, was advised by the attorneys for the Foleys that (a) the agreement had expired, (b) appellant Hudesman was belatedly trying to reactivate the agreement, and (c) the respondents' offer was firm despite Hudesman's efforts. Under these circumstances, respondents, in essence, contend they were under no duty to make any further inquiry.

We need not now decide whether, under any and all circumstances, a prospective purchaser of realty, with some incidental notice of a prior though uncertain third-party claim of interest, may satisfy his duty of inquiry as to the status of the purported claim by reliance upon statements of attorneys for the seller. Suffice it to say that, in the instant case, appellant's countervailing affidavits indicate that respondents may, in fact, have made additional inquiries and in the course thereof acquired further information concerning the nature and significance of appellant's claim. In this respect, the affidavit of Mr. Kreger states:

> Defendant Smith became interested in the property in approximately September and made various inquiries about the Kreger earnest money. Among these inquiries was one to the Washington Title Insurance Company, which company was fully informed by Lee Coulter about the terms of the earnest money and the fact that the earnest money was outstanding, . . . .

If the opinion of Mr. Coulter, or the contention of appellant, as to the viability of the earnest-money agreement

was, in fact, communicated to respondents, by the title company or by any other source to which the respondents may have directed inquiry, the substance of that information would appear to be, from the letters of Mr. Coulter attached to the affidavits submitted by appellant, that the earnest-money agreement was at all pertinent times deemed to be in full force and effect.

Thus, there would appear to be a genuine issue of fact as to the nature and extent of the information actually received by respondents prior to the consummation of their purchase. This, in turn, raises a mixed question of fact and law as to whether the character and total content of the information which respondents may have timely acquired was such as would excite the apprehension of a person of average prudence and prompt or require a more diligent investigation of the circumstances than respondents presently contend they pursued and relied upon.

Under these circumstances, we are not prepared to hold, upon the basis of the record before us, that respondents as the moving parties in the summary judgment proceeding, have sustained their burden of establishing that there is no genuine issue of material fact as to whether they were, in fact and in law, bona fide purchasers for value.

Both parties have made motions in the course of this appeal, one to strike the statement of facts and the other to strike respondents' brief. Each motion is denied.

The summary judgment is reversed and the cause is remanded for trial upon the merits. Costs on appeal, as between appellant Hudesman and respondents Smith will abide the results of trial.

FINLEY, C. J., HILL, J., and OTT, J. Pro Tem., concur.