[No. 2598–3. Division Three. January 4, 1979.]

THOMAS E. WALDROP, ET AL, *Respondents,* v. GEORGE W. HOLLAND, SR., ET AL, *Appellants.*

*Carl N. Warring* and *C. E. Hormel,* for appellants.

*Collins & Hansen* and *Tom Cordell,* for respondents.

GREEN, J.—Plaintiffs brought this action against the defendants Holland to recover upon two causes of action: (1) an unpaid account for well drilling, and (2) damages resulting from defendants' alleged breach of a lease. Defendants appeal from judgments entered against them upon each cause of action.

Two questions are presented: (1) As a matter of law, does a partnership assume an antecedent loan obtained by one of the partners to purchase equipment later transferred to the partnership? and (2) Was the summary judgment for damages for breach of the lease agreement properly entered?

The first question arises from a trial to the court. Since the defendants have not assigned error to the findings of fact, they are considered verities. According to these findings, the defendants loaned money to Dalton Waldrop in 1974. In mid–1975, Dalton Waldrop and Thomas Waldrop, his brother, formed a partnership for the drilling of wells. In January 1976, this partnership was incorporated as Waldrop Drilling & Pipe Co., Inc. In May 1976, Dalton Waldrop left the corporation and his interest was taken over by Thomas Waldrop. The court specifically found:

> Neither the partnership . . . nor the corporation . . . assumed the obligation of Dalton Waldrop to the defendants for the loan to Dalton Waldrop by the defendants in 1974.

In August 1976, defendants employed Waldrop Drilling & Pipe Co., Inc., to repair one of their pumps. This repair work was completed on August 24, 1976, at a reasonable cost of $2,873.75. On November 4, 1976, at the request of defendants, the corporation performed additional repair services in the reasonable amount of $710.54. Neither of these bills was paid.

The corporation brought this action to collect the amount due. Defendants sought to offset these amounts

against the balance owed to them by Dalton Waldrop. The trial court rejected the offset and entered judgment in favor of the corporation for these amounts plus interest and costs.

It is defendants' position that because Dalton Waldrop, the original debtor, used the loan proceeds to purchase well drilling equipment which later became an asset of the partnership between Dalton and Thomas Waldrop, and later a corporate asset, the partnership and the corporation are liable for the original loan. Consequently, defendants contend that the repair cost should have been offset against the balance owed to them by Dalton Waldrop. We disagree.

■ Defendants loaned Dalton Waldrop $12,500 on May 29, 1974. This loan was evidenced by a handwritten agreement. The agreement itemizes the equipment to be purchased with the proceeds, provides for repayment in the sum of $25,000 within 1 year,[1] and states that the equipment is mortgaged to the defendants until repayment. The parties do not claim that this agreement created a valid security interest in the property under the Uniform Commercial Code, RCW 62A, nor does the record reflect the perfection of such an interest. Thomas Waldrop testified he was unaware of this obligation until the business entity performed some work for defendants, and the defendants thereafter sought to offset the cost of the work against the amount of their loan to Dalton Waldrop. The court found that at the time the repairs in question were performed, Thomas Waldrop, president of the corporation, told the defendants that they would be responsible for payment for the services. The court further found that neither the partnership nor the corporation in fact assumed Dalton Waldrop's personal obligation to the defendants. In these circumstances, the trial court was correct in concluding that

---

[1] We do not reach the question of usury, since it was not considered by the trial court and no findings were entered on that issue. It should be noted that on appeal defendants contend that the usury aspect of the original agreement was purged.

neither entity became obligated for Dalton Waldrop's personal obligation to the defendants.[2] A loan made to a partner in his individual capacity before formation of the partnership is not a partnership debt unless it is expressly assumed by the partnership. *In re Ginsberg,* 219 F.2d 472 (3d Cir. 1955). Therefore, defendants are obliged to look to Dalton Waldrop for collection of their loan.

The second question raises the propriety of the summary judgment for damages entered against defendants for the alleged breach of the lease. On December 29, 1976, Thomas Waldrop leased 270 acres of land to defendants for 1 crop year ending December 15, 1977, at $200 per acre. The total rental for the year was $54,000, to be paid one–half on January 25, 1977, and the other half at the end of the lease. The typewritten lease provided for payment of the first half on execution of the lease, but this language was stricken and the date January 25, 1977, was inserted and initialed. The complaint alleges that defendants defaulted in the first payment, and, as a result, Mr. Waldrop re–leased the property to a third party for $43,500 to his damage in the sum of $10,500. Defendants in their answer admit they paid none of the rent, denied they were in default, and counterclaimed for damages alleging Mr. Waldrop wrongfully leased the property to a third party who took possession of the farm.

Mr. Waldrop moved for summary judgment asserting that no genuine issue of material fact existed. In support of

---

[2]The authorities cited by defendants are not persuasive. RCW 25.04.170 of the Uniform Partnership Act simply makes a partner entering an existing partnership liable for the partnership obligations arising before his admission, but limits his liability to satisfaction out of partnership property. *Leckie v. Bennett,* 141 S.W. 706 (Mo. Ct. App. 1911), involved the implied assumption by a corporation of partnership debts. The court held that, under the particular facts, when the corporation purchased and took into its possession all the property of the partnership, it was estopped to deny an assumption of the partnership debts as the consideration for the purchase. The case is distinguishable from the one at bar. *Leckie* involved an existing corporation. Here, we have the formation of a new partnership and no substantial evidence that the partnership would assume either partner's personal obligations. In fact, the record is void of any evidence of the details surrounding the formation of the partnership.

that motion, he filed an affidavit in which he reiterated the allegations of his complaint and additionally stated: (1) Defendants did not pay the rent due on January 25, 1977; (2) defendants never took possession of the property; (3) after January 25, his attorney wrote a letter to defendants Mr. and Mrs. George Holland, Sr., requesting the first one-half payment and advising them that if payment was not received by January 31, 1977, he would be forced to re-lease the property in question in order to mitigate any damages he might suffer; (4) defendants still did not make the rental payments; and (5) he was forced thereby, at great effort by himself and a realtor, Jack Patrick, to secure a new lessee of the property at a rental of $43,500. One of Mr. Waldrop's attorneys also filed an affidavit, pointing out that George Holland, Jr., testified on deposition and was asked, "Did you take any action about farming this ground? Did you move onto it?" to which Mr. Holland responded, "No." Defendants had previously admitted, in response to the plaintiffs' request for admissions, that they had never entered into possession of the premises.

In opposition to the motion for summary judgment, defendants filed the affidavit of George Holland, Sr. He attested that he received a letter by mail dated January 28, 1977, from Mr. Waldrop's attorney, stating that unless one-half of $54,000 was paid before 5 p.m. on January 31, 1977, the land would be leased to other parties. He further attested that prior to this letter, plaintiffs' agent, Jack Patrick, of Patrick Real Estate, indicated the first payment could be made at a later time than that appearing in the lease. According to Mr. Holland, Mr. Patrick subsequently informed him that the property had been leased to a third party for the same rental as called for in his lease.

On the foregoing record, Mr. Waldrop was granted a summary judgment. Defendants contend there are genuine issues of material fact in three areas: (1) Were defendants in possession? (2) Did Mr. Patrick's oral statement to the defendants constitute an oral modification of the contract, and could defendants rely upon it? and (3) What is the

proper amount of damages? Without reaching the other two contentions of defendants, we find a genuine issue of fact as to item (2) and reverse.

According to the affidavit of defendant George Holland, Sr., Jack Patrick, as the plaintiffs' agent, indicated to him that the first payment could be made at a later time. This statement is not controverted. As a consequence, genuine issues of fact exist as to whether Mr. Patrick made the statement, whether he had authority to make it as an agent of the plaintiffs, and if so, whether defendants could reasonably rely upon it in light of the letter written by Mr. Waldrop's counsel.

Consequently, we affirm the judgment entered upon plaintiffs' first cause of action, but reverse the summary judgment entered upon the second cause of action and remand for trial.

McINTURFF and ROE, JJ., concur.