[No. 9319–3–I.   Division One.   July 12, 1982.]

C. L. ROBESON, ET AL, *Appellants,* v. DON
HELLAND, ET AL, *Respondents.*

*William V. Vetter* and *Walter E. Webster, Jr.,* for
appellants.

*Kris Chrey, Paul Silver, V. A. Retacco, Andrew Curtis, Jr., Marlin Vortman, Norm Maleng, Prosecuting Attorney,* and *Thomas Wolfendale, Deputy,* for respondents.

WILLIAMS, J.—This is an appeal from an order denying a motion made by C. L. and Jean Robeson to enforce a post-judgment settlement agreement superseding a judgment quieting title to their home in Donald and Lynn Helland. The sole issue is the propriety of the procedure used.

The pertinent facts are these: In 1976, Washington Credit, Inc. took a default judgment in district court against the Robesons for an unpaid candy bill of $205.20. Judgment was docketed in superior court and the Robesons' Bellevue home sold on execution by the sheriff on February 10, 1978, to Douglas Von Bismark and Frank T. Wiechert, minor children of Gary Culver, the attorney for Washington Credit, who transferred it to the Hellands on March 23, 1979, by special warranty deed.[1] On May 8, 1980, the Hellands transferred title by special warranty deed to William Miebach for $33,000 stated consideration with excise tax paid; and 6 days later, Miebach gave a special warranty deed to Barry Klepper and Lieneka Lashley for $41,000 stated consideration but no excise tax paid.

In the meantime, in June of 1979, the Robesons brought a quiet title action against the Hellands, Washington Credit, Inc., Gary Culver, Safeco Title Insurance Company, and the King County Sheriff, which resulted in judgment being entered on March 3, 1980, quieting title in the Hellands. No appeal was taken from this judgment, the parties on February 29, 1980, having signed a settlement agreement whereby the Robesons would regain title to the property if each of the parties paid the Hellands the following sums no later than April 2, 1980:

| | |
|---|---|
| Robesons | $11,500 |
| Safeco Title Ins. Co. | 5,500 |

---

[1] The deed excludes all statutory warranties, simply promising that the grantor has not alienated the title from the time he received it.

Culver/Washington Credit                    5,500
King County Sheriff                          3,500

On April 2, the Robesons told their attorney that they were having difficulty raising the money but would have it soon. The attorney called Kris A. Chrey, Safeco's attorney, who had been designated in the agreement as the stakeholder, telling her of the problem and asking for relief. Her reply was ambiguous in that she was uncertain of the extent of her authority to extend the time for performance. It is disputed whether it was Safeco's or Robesons' attorney who was to contact the other parties to the contract but the Robesons say that if they did not hear to the contrary, subsequent performance was acceptable. On April 15, Kris Chrey received a $7,000 tender which she rejected because "I have no instructions at this point to either hold or disburse the $7,000 and am therefore returning the cashier's check to you", and on April 23, she rejected the Robesons' tender of full performance. There is no evidence that any of the other parties performed as promised.

In May, the Robesons, having been served with a Writ of Execution calling for their eviction, moved in a show cause proceeding to enforce the agreement on the basis that they had tendered performance and were entitled to their home, any delay having been excused. Following issuance of a temporary restraining order, the court heard the motion on affidavits and then entered findings of fact and conclusions of law that the Robesons had not performed, performance had not been waived and the agreement became void on April 2, 1980. The motion was then denied leaving the judgment and Writ of Execution in the quiet title action in effect.

█ Because no oral evidence was offered for or against the motion, the proceedings took the form of a summary judgment. CR 56; *Fisher v. Clem*, 25 Wn. App. 303, 607 P.2d 326 (1980). Accordingly, the findings of fact and conclusions of law entered will be treated as surplusage. *Duckworth v. Bonney Lk.*, 91 Wn.2d 19, 586 P.2d 860 (1978). The question on appeal is whether there are any issues of

material fact requiring a trial. *Rainier Nat'l Bank v. Inland Mach. Co.,* 29 Wn. App. 725, 631 P.2d 389 (1981). There are at least four.

First, was time of the essence? The agreement provides that it "is not effective nor binding on any parties unless signed by all parties within 15 days hereof, and performance by all parties take place on or before April 2, 1980." Also specified is that all parties perform "exactly" as set forth. But there is no evidence that any of the parties performed by April 2, or at all. By not doing so, did the parties, as shown by their conduct, intend that the contract die by its own terms or was the time of their performance not particularly important so long as it was within a reasonable time? *See Carr v. Settle Constr. Co.,* 11 Wn. App. 336, 522 P.2d 849 (1974).

Second, even though time be of the essence, was strict performance waived? *See Reeploeg v. Jensen,* 5 Wn. App. 695, 490 P.2d 445 (1971), *rev'd on other grounds,* 81 Wn.2d 541, 503 P.2d 99 (1972). The record shows a dispute over the content of a telephone call made on April 2, 1980, from Robesons' attorney to Safeco's. If Safeco's attorney did say she would contact the Robesons if delay was not acceptable to the other parties and did not do so, then was the time provision waived? *See Waldrop v. Holland,* 22 Wn. App. 336, 588 P.2d 1237 (1979).

Third, there is the question of whether the subsequent transferees were bona fide purchasers. The intervenors, Klepper and Lashley, took a virtually unwarranted title; at least one transfer was made without paying the excise tax; each transferee took title from an "owner" who was not in possession; and the sheriff's transfer was to two minor children who may not have been competent. These and other factors may defeat bona fide status.

Fourth, there is the question of whether the parties contracted in good faith. *Liebergesell v. Evans,* 93 Wn.2d 881, 613 P.2d 1170 (1980). The whole case is disconcerting and must be carefully examined before final adjudication.

Reversed and remanded for trial.

CORBETT, J., concurs.

RINGOLD, J. (concurring)—The record shows issues of material fact as to whether the Hellands waived the April 2 deadline or are estopped from asserting it. Reading the affidavits in the light most favorable to the Robesons: on April 2, 1980 the Robesons' attorney called Ms. Chrey, the stakeholder, and requested an extension of time in which to raise the money. Ms. Chrey stated that she would check with the Hellands. Several days later, after the deadline had passed, Jean Robeson received a call from Mr. Helland asking what was happening. Mrs. Robeson told him that they were trying to get the money together as soon as possible. Neither Mr. Helland nor Ms. Chrey ever told the Robesons, prior to the tender of the full amount, that they would not permit an extension.

If these facts are found to be true, following an evidentiary hearing, then it could be found either that the Hellands waived the right to claim performance by April 2, or that the Robesons could reasonably rely on the acceptability of a later performance, giving rise to an estoppel of the Hellands to assert the deadline.

Of greater concern to me is the necessity that the trial court then sort out the rights to the disputed property as between the Robesons and Lashley and Klepper, the Hellands' successors in interest. To do so will require a determination of the factual background of the sale to Lashley and Klepper to see whether they were put on actual or constructive notice of the Robesons' claim and whether they acted in good faith. Open possession of the property by the Robesons may serve to put the intervenors on constructive notice of the Robesons' claims. So may the circumstances surrounding the sale: the conveyance of a valuable property by special warranty deed (with no meaningful warranty), the speed at which the Hellands' grantee turned around and resold the property, and the current

payment of taxes and mortgage by the Robesons.

The standard as to notice is that

> Notice to a purchaser of real estate that parties other than the seller (or encumbrancer) have a claim of interest in the property need not be actual nor amount to full knowledge, but it should be such information as would excite apprehension in an ordinary mind and prompt a person of average prudence to make inquiry; however, a circumstance which would lead a person to inquire is only notice of what a reasonable inquiry would reveal.

*Glaser v. Holdorf,* 56 Wn.2d 204, 209, 352 P.2d 212 (1960). *See also Hudesman v. Foley,* 73 Wn.2d 880, 441 P.2d 532 (1968); *Paganelli v. Swendsen,* 50 Wn.2d 304, 311 P.2d 676 (1957). Had the intervenors inquired of the Robesons, who were obviously living at the property at the time, they would doubtless have learned of the Robesons' claims under the settlement agreement. *Glaser v. Holdorf, supra.*

On the other hand, the Robesons could have obviated the problem of subsequent bona fide purchasers by putting their claim to the property on the record before the sale, by filing a lis pendens or a motion to vacate the default judgment quieting title in the Hellands. By their failure to do so, they bring into question their equitable right to the property as opposed to the right of the intervenors.

At trial, presumably with all interested parties before the court, the rights of the Robesons, Hellands, and intervenors to the disputed property may be fully and fairly determined. Although I have doubts about the method of relief selected by the Robesons, absent a challenge to the procedure I join with the court and remand for trial.