[Nos. 13592–9–I; 14131–7–I. Division One. April 7, 1986.]

*In the Matter of the Guardianship of*
ROSE BELLANICH.

CECIL LOWE, *as Guardian, Respondent*, v. ROBERT
BELLANICH, *Appellant*.

*Lane, Powell, Moss & Miller* and *Ellen O. Pfaff,* for appellant.

*Cyrus Dimmick, Thompson, Johnson & Wechsler,* and *Karen Marie Thompson,* for respondent.

SCHOLFIELD, C.J.—Robert Bellanich assigns error to the trial court's appointment of a guardian for the person and estate of Rose Bellanich, arguing that the appointment was void for lack of proper notice. With the subsequent appointment of successor guardians, however, that issue has become moot and will not be addressed on its merits. Robert also assigns error to the court commissioner's order compelling him to convey by quitclaim deed certain property to the estate, maintaining that the property was a gift from Rose Bellanich. We reverse the court commissioner, and remand for trial the issue of whether Rose Bellanich made a gift of that property to her son Robert.

## FACTS
### THE GUARDIANSHIP

Rose Bellanich is a 79–year–old woman who suffers from Alzheimer's disease. On March 16, 1983, her son, Robert Bellanich, filed a petition nominating himself to be appointed guardian of his mother's person and estate. A hearing on the petition was noted for March 29, and on March 17 Rose received notice of the hearing by certified mail at her residence, the Columbia Lutheran Nursing

Home.

At the March 29 hearing, the court appointed Deborah Arron as guardian ad litem for Rose. Arron met with Rose at the nursing home on April 8, where she explained the guardianship petition to Rose, the nature of the proceedings and Rose's right to contest the petition and be present at the hearing on the petition. Arron filed a report with the court on April 18, recommended that Cecil Lowe be appointed guardian of the estate, and that Rose's daughter Rosemary be appointed guardian of her person. Robert stipulated to Lowe's appointment, but took issue with Rosemary's appointment as personal guardian. Therefore, trial on the personal guardianship issue was set for May 6, 1983.

Rose Bellanich did not receive written notice of the May 6 trial nor was she present. Robert elected not to call her as a witness and the trial judge saw no need for her attendance. Her guardian ad litem, Arron, was present, however. The court appointed Lowe as the personal guardian after Rosemary declined to serve.

On appeal, Robert contends that the notice requirements of RCW 11.88.040 were not met since Rose only received written notice of a hearing where her guardian ad litem was appointed and did not receive notice of the hearing where the guardian of her estate and person was appointed.

At oral argument, this court was advised that Cecil Lowe died in September 1984, and that, by an agreed order, the Foundation for the Handicapped was appointed as the successor guardian of Rose's estate, and Nancy Anrich (phonetic) was appointed as guardian of her person on November 21, 1984. As a result, the guardianship issue is moot, and a decision by this court on that issue would serve no purpose.

### The Quitclaim Deed

After the death of her husband in the late 1960's, Rose returned to her native country, Yugoslavia, to live. While she was absent from the United States, her daughter Rose-

mary sold Rose's Seattle home. When she returned to the United States, Rose asked Robert to purchase another home for her and apparently directed him to place the title in both their names.

At the May 6, 1983 guardianship hearing, Robert was questioned by his attorney about this property. He explained that the reason the house was put in both names was "[j]ust to protect the house so it couldn't be sold out from under mom." Robert stated that he claimed absolutely no interest in the property and testified that he would be willing to execute a quitclaim deed of his interest in the property back to his mother or to Cecil Lowe, were Lowe appointed as guardian.

After Lowe was appointed, however, Robert refused to execute the quitclaim deed. Lowe then brought a motion seeking to compel Robert to execute the deed. In response, Robert filed Rose's affidavit in which she states that she and her son own the property together and that she does not want his name removed from the deed. Robert also submitted his own affidavit in which he explains that his prior testimony "was intended to show the court that [he] was not attempting to take property from [his] mother, when the house was purchased, as was done by [his] siblings." He maintains that at the time he testified, he did not believe he had an interest in the property.

Nevertheless, the court commissioner granted the guardian's motion and directed Robert to sign the quitclaim deed. Robert asked for reconsideration of that order and submitted affidavits from Rose's cousin, her cousin's husband, and a friend of Rose's, who all state that Rose had told them that she had made a gift of one–half interest in the house to Robert. The commissioner denied the motion for reconsideration, and Robert appealed to this court.

Initially, the estate argues that Robert's appeal is untimely, in that the commissioner's decision must first be reviewed by the presiding judge of the superior court. King

County Local Rule 0.9(c).[1] The commissioner's order is properly before this court for review. An aggrieved party has a right under RCW 2.24.050[2] to review of a commissioner's order by the superior court, but review is not a mandatory prerequisite to appeal from that order.

## WAIVER AND ESTOPPEL

The estate maintains that Robert waived any interest he had in the property by his own sworn testimony in the guardianship proceeding and is now estopped from claiming that the property was a gift from his mother. We disagree.

A waiver is the intentional relinquishment of a known right. *Wagner v. Wagner*, 95 Wn.2d 94, 102, 621 P.2d 1279 (1980). As the *Wagner* court stated at page 102:

> It is necessary that the person against whom waiver is claimed have intended to relinquish the right, advantage, or benefit and his action must be inconsistent with any other intent than to waive it. . . . Intent cannot be inferred from doubtful or ambiguous factors.

Robert maintains that his testimony at the guardianship proceeding was intended to demonstrate his worthiness to be the guardian of his mother's estate. Moreover, if, as Robert claims, he did not believe at the time he testified that he had any interest in the subject property, it cannot be said that he waived a "known right".

Likewise, Robert is not estopped from asserting his interest here because there was no detrimental reliance by the estate guardian upon Robert's promise to quitclaim his interest. *See Wagner*, at 102. The attorney's fees and costs

---

[1] Local Rule 0.9 concerns the superior court ex parte department and reads in pertinent part:

"(c) Review of rulings made by a commissioner in this department shall be noted before the Presiding Judge for hearing or assignment."

[2] RCW 2.24.050 reads in pertinent part: "[U]nless a demand for revision is made within ten days from the entry of the order or judgment of the court commissioner, his orders and judgments shall be and become the orders and judgments of the superior court, and from same an appeal may be taken to the supreme court or the court of appeals in all cases where an appeal will lie from like orders and judgments entered by the judge."

incident to compelling Robert to make good on his promise were not incurred until after his refusal to quitclaim. The estate would have incurred the same expenses regardless whether Robert had claimed his interest in the guardianship proceeding originally, or afterward as it occurred here.

STIPULATIONS

Robert's testimony is also not, as the estate argues, a binding stipulation. Although stipulations and agreements of parties are viewed with favor, they will not be enforced unless they are "within the general scope of the case made by the pleadings, and are in such form as may be required by rule of court or statutory enactment." *Smyth Worldwide Movers, Inc. v. Whitney,* 6 Wn. App. 176, 178, 491 P.2d 1356 (1971) (quoting 50 Am. Jur. *Stipulations* § 12 (1944)). Although Robert agreed in open court to quitclaim his interest in the property, ownership of the Bellanich house was not at issue in the guardianship proceeding, and thus not within the scope of the pleadings nor in the posture of a dispute between the parties.[3]

The remaining question is whether Robert is entitled to a trial on the merits of his claim to an interest in the Bellanich house.

SUMMARY JUDGMENT

■ The court commissioner made his determination on the basis of affidavits submitted by the parties and quotations from Robert's prior testimony in the guardianship proceeding only. Where a motion is heard on affidavits not supplemented by oral testimony, the proceeding is reviewed as a motion for summary judgment. CR 56; *Robeson v. Helland,* 32 Wn. App. 487, 489, 648 P.2d 461 (1982).

■ When reviewing a summary judgment, this court engages in the same inquiry as the trial court, viewing the facts in the light most favorable to the nonmoving party.

---

[3]Regarding stipulations, CR 2A states (with emphasis added) that:

"No agreement or consent between parties or attorneys in respect to the proceedings in a cause, *the purport of which is disputed,* will be regarded by the court unless the same shall have been made and assented to in open court . . ."

*Wells v. Miller,* 42 Wn. App. 94, 708 P.2d 1223 (1985); *Hartley v. State,* 103 Wn.2d 768, 774, 698 P.2d 77 (1985). Summary judgment is proper only when the pleadings, depositions, and admissions, as well as affidavits, present no genuine issue of material fact, thus entitling the moving party to judgment as a matter of law. CR 56(c); *Wells v. Miller, supra* at 96. The burden is on the moving party, however, to prove that there is no genuine issue of material fact that could influence the outcome of a trial. *Hartley v. State, supra* at 774. The question on this appeal, then, is whether there remains any issue of material fact and thus the need to remand for a trial. *Robeson v. Helland, supra* at 489–90.

The requirements of an inter vivos gift are donative intent, a subject matter capable of delivery, and actual delivery. *Oman v. Yates,* 70 Wn.2d 181, 185, 422 P.2d 489 (1967); *Buckerfield's Ltd. v. B.C. Goose & Duck Farm Ltd.,* 9 Wn. App. 220, 224, 511 P.2d 1360 (1973). Donative intent is the most difficult element to establish. *Buckerfield's Ltd. v. B.C. Goose & Duck Farm Ltd., supra* at 224. In that regard, it has been held that an unexplained transfer of money from parent to child raises a presumption of a gift absent definite, reliable, and convincing proof to the contrary. *Wakefield v. Wakefield,* 59 Wn.2d 550, 368 P.2d 909 (1962).

In the case at bar, delivery occurred because legal title in the home was placed with Rose's consent in both her and her son's name. 38 C.J.S. *Gifts* § 19, at 799 (1943) (delivery of property which transfers legal title is sufficient to effectuate a gift). However, given Robert's sworn testimony explaining why the house was put in both names, it is questionable whether the presumption of a gift ever arose as it would in otherwise unexplained circumstances. *See Wakefield v. Wakefield, supra.* Yet, Robert's subjective understanding of why his name was placed on the title is not controlling. Rather, Rose's donative intent, if any, is at issue.

Rose's affidavit submitted to the court commissioner

states that she and her son are joint owners of the home and expresses her desire that his name not be removed from the title. Although Rose has been found legally incompetent to manage her estate, the appointment of a guardian does not make her presumptively incompetent to testify. ER 601; *Sumerlin v. Department of Labor & Indus.,* 8 Wn.2d 43, 111 P.2d 603 (1941), *overruled on other grounds in Windust v. Department of Labor & Indus.,* 52 Wn.2d 33, 323 P.2d 241 (1958).

In addition, the affidavits of her cousin and her cousin's husband plus the affidavit of a long-time friend are further evidence of Rose's intent to give one-half interest in her home to her son Robert. The estate urges us to disregard these affidavits, which were submitted with Robert's motion for reconsideration, as untimely, and cites CR 56. We decline to do so, not only because CR 56 provides no basis for such a ruling, but because we see no compelling reason to disregard otherwise competent evidence on the basis of a hypertechnicality, particularly in the context of a summary proceeding where the result might be to deny a litigant his opportunity to a trial on the merits of his claim.

In conclusion, we hold that the evidence before the court commissioner presented a genuine issue of material fact regarding Robert's interest, if any, in the subject property. Consequently, we reverse the court commissioner's ruling and remand this case for a trial on that issue.

## FRIVOLOUS APPEAL

The estate has also requested an award for its costs of appeal pursuant to RAP 18.9(c), claiming that Robert's appeal is frivolous. An appeal is frivolous when it presents no debatable issues and is so devoid of merit that there is no reasonable possibility of reversal. *Streater v. White,* 26 Wn. App. 430, 613 P.2d 187 (1980). At least at the point when Robert agreed to the appointment of successor guardians to Cecil Lowe, his appeal on the guardianship issue became moot, and therefore, arguably frivolous. However, these appointments occurred after his appeal was per-

fected, and we have reversed this case on the other issue presented on appeal. This appeal is not frivolous, and the respondent's request for attorney's fees is denied.

COLEMAN and GROSSE, JJ., concur.