ESTATE OF Tomas B. AGUIRRE, a probate estate, by and through Albert C. AGUIRRE, Special Administrator, Plaintiff—Appellee—Cross–Appellant,

v.

Christopher T. KORUGA, Defendant,

and

Ana Maria Koruga, wife and the marital community comprised thereof, Defendant—Appellant—Cross–Appellee.

Nos. 01–35190, 01–35191.
D.C. No. CV–99–1281–RSL.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 14, 2002.

Decided July 16, 2002.

Before BROWNING, B. FLETCHER, and GOULD, Circuit Judges.

MEMORANDUM *

Plaintiff Estate of Tomas B. Aguirre (the "Estate"), a Philippine probate estate, brought suit against Ana Maria Koruga, her husband, and corporations whose stock is registered in their names. The Estate lays claim to over four million dollars de-

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

posited by Tomas Aguirre in a SeaFirst bank account in Washington and withdrawn by his daughter, Ana Maria Koruga. Ana Maria and her husband, Christopher Koruga, maintain that Tomas intended the funds to be a gift to them to provide security for their family in the United States and that, thus, the funds belong to the Korugas, not to the Estate.

The district court granted summary judgment in favor of the Estate. It also found that the defendants raised no genuine issues of fact as to their affirmative defenses of equitable estoppel and statute of limitations. The Korugas challenge these rulings on appeal. The Estate, in turn, cross-appeals the district court's rulings regarding prejudgment interest.

The district court had diversity jurisdiction pursuant to 28 U.S.C. § 1332. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We review the grant of summary judgment *de novo*, *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001), and we reverse and remand because there are triable issues of fact with respect to the Estate's claim as well as the Korugas' affirmative defenses. Because the parties are familiar with the factual background, we do not recite the details here.

### I.

### Washington Deadman's Statute

■ Applying the Washington deadman's statute, the district court excluded the testimony of the Korugas regarding their transactions and conversations with Tomas. *See* Wash. Rev.Code § 5.60.030. The Korugas claim that the Philippine deadman's statute, *see* Phil. Ct. R. 130,

§ 20(a), rather than the Washington deadman's statute, should apply in this case. Unlike the Washington deadman's statute, the Philippine deadman's statute does not apply to persons like the Korugas defending against a lawsuit initiated by an estate. *Razon v. Intermediate Appellate Court*, 207 Phil. S.Ct. 234, 238 (1992).

■ In diversity cases where state law supplies the rule of decision, federal courts apply the competency rules that the forum state would apply. Fed.R.Evid. 601. Therefore, we must determine which deadman's statute the Washington courts would apply in this case. *See Equitable Life Assurance Soc'y v. McKay*, 837 F.2d 904, 905 (9th Cir.1988) (exploring whether Oregon, the forum state, would apply the Washington deadman's statute).

■ We conclude that the Washington Supreme Court would follow the Restatement's approach in choosing which forum's deadman's statute to apply. According to the Restatement, the local law of the forum determines which witnesses are competent to testify and the considerations that may affect their credibility. Restatement (Second) of Conflict of Laws § 137 (1971). Deadman's statutes determine the competency and credibility of witnesses. *See* Wash. Rev.Code § 5.60.030 (placing the deadman's statute under the chapter covering the competency of witnesses); Fed.R.Civ.P. 601 advisory committee's notes (characterizing deadman's statutes as rules of competency). Thus, the deadman's statute of Washington, the forum state, applies.[2]

---

**2.** This approach for determining which forum's competency rule should govern is consistent with other decisions in this area. *See Equitable Life Assurance Soc'y*, 861 F.2d at 222–23 (applying Oregon law, rather than the Washington deadman's statute, in a case filed in Oregon in which Washington substantive law controlled); *Hortman v. Henderson*, 434 F.2d 77, 80 (7th Cir.1970) (applying the Illinois deadman's statute in a case filed in Illinois in which Missouri substantive law controlled).

■ While we agree with the district court that the Washington deadman's statute applies in this case, the Estate can waive the bar imposed by the statute "by (a) failure to object, (b) cross examination which is not within the scope of direct examination, and (c) by testimony favorable to the estate about transactions or communications with the decedent." *Thor v. McDearmid*, 63 Wash.App. 193, 817 P.2d 1380, 1386 (Wash.Ct.App.1991). The issue of waiver arose at oral argument in this appeal. However, because the parties did not raise this issue below, we remand for the district court to decide the issue in the first instance.[3]

## II.

### The Gift

■ Under Washington property law, the elements of a completed gift consist of the following: (1) an intention of the donor currently to give; (2) a subject matter capable of passing by delivery; (3) a delivery as perfect as the nature of the property and the circumstances and surroundings will reasonably permit; (4) and acceptance by the donee. *Sinclair v. Fleischman*, 54 Wash.App. 204, 773 P.2d 101, 103 (Wash. Ct.App.1989); *Buckerfield's Ltd. v. B.C. Goose & Duck Farm Ltd.*, 9 Wash.App. 220, 511 P.2d 1360, 1363 (Wash.Ct.App. 1973). Only the first and the third elements are at issue in this case.

■ Generally, the party claiming that a gift has occurred must prove the elements of a completed gift by clear, co-

gent and convincing evidence. *See Estate of Lennon v. Lennon*, 108 Wash.App. 167, 29 P.3d 1258, 1266 (Wash.Ct.App.2001). Notwithstanding this general rule, the Korugas argue that the Estate bears the burden of proof in this case because an unexplained transfer of money from a parent to a child raises the presumption that a gift was intended. *In re Guardianship of Bellanich*, 43 Wash.App. 345, 717 P.2d 307, 312 (Wash.Ct.App.1986), *overruled on other grounds by Brouillet v. Cowles Pub. Co.*, 114 Wash.2d 788, 791 P.2d 526, 529 (Wash.1990); *Buckerfield's*, 511 P.2d at 1363. However, this presumption does not relieve the Korugas of the burden of proving that Tomas transferred the money to Ana Maria. Without a delivery, there is no unexplained transfer of money from parent to child giving rise to the presumption that the parent intended to make a gift of the money.

■ The crux of the inquiry at the heart of this case is whether, when Ana Maria withdrew the funds from the SeaFirst account pursuant to the durable general power of attorney, there was a completed delivery to her. The fact of the existence of the power of attorney is not enough. Under section 11.94.050 of the Washington Revised Code, a durable general power of attorney does not give the agent the power to make gifts of property owned by the principal unless the document specifically provides for this power. Tomas signed a standard form from SeaFirst Bank giving Ana Maria power of attorney; the power to make gifts was

---

**3.** At least two statements by the Estate may have waived the deadman's statute. First, the Estate alleged in its complaint that "Defendants Koruga represented to plaintiff that they would utilize the powers of attorney to invest the money entrusted to them by Tomas B. Aguirre for the benefit of Tomas B. Aguirre" in support of the Estate's claim of fraud and misrepresentation. Amended Com-

plaint at 5. Second, at oral argument the Estate discussed Ana Maria's testimony with regard to when Tomas may have given her authorization to make a gift. We express no opinion as to whether these or other statements by the Estate waived the deadman's statute because further briefing and examination by the district court is necessary.

not enumerated on the form. Therefore, the district court concluded that delivery was not validly completed as a matter of law when Ana Maria withdrew the funds from the SeaFirst account because the delivery of a gift exceeded her powers as attorney-in-fact.

The district court, however, did not have the benefit of a recent opinion of the Washington Court of Appeals, which indicates that if Tomas specifically authorized Ana Maria to make a gift to herself, section 11.94.050 does not render the gift invalid. *Estate of Lennon,* 29 P.3d at 1262. In *Estate of Lennon,* Elsie Lennon opened up a bank account with her stepson, Roger, as a joint tenant with right of survivorship. 29 P.3d at 1262. Elsie gave Roger a general power of attorney. *Id.* The account consisted solely of funds deposited by Elsie, and, therefore, Roger had no ownership interest in the funds prior to Elsie's death. *Id.* at 1267. Two days prior to Elsie's death, Roger wrote and signed three checks from the account to himself, his sister, and another woman. *Id.* at 1262. The checks were denominated as Christmas gifts. *Id.*

The Washington Court of Appeals concluded that, because the power of attorney did not grant Roger the power to make gifts, under section 11.94.050 Roger had no authority to write the Christmas checks *unless Elsie specifically instructed him to do so. Id.* at 1267. The court found that Roger did not provide admissible evidence raising a genuine issue of fact as to whether Elsie instructed him to write the Christmas checks. *Id. Estate of Lennon* supports the Korugas' contention that section 11.94.050 merely prevents the agent from making a unilateral gift, unauthorized by the principal. However, when there is evidence that the specific gift was authorized by the principal, the policy behind section 11.94.050 of protecting the principal does not apply.

The district court erred in concluding that the evidence of Tomas's intent and authorization did not matter. According to *Estate of Lennon,* we must determine whether Ana Maria provided enough admissible evidence to raise a genuine issue of fact as to whether Tomas authorized and intended the gifts.

The district court concluded that the Korugas met this burden. We agree. The testimony of Christina de la Fuente, Tomas's personal assistant, indicates that Tomas authorized and intended the money in the SeaFirst account to be transferred to TF Corporation, and he authorized and intended all of the shares of TF Corporation to be registered in the names of Ana Maria and her husband. Tomas offered no compensation to Ana Maria and her husband for the huge effort they put into developing the property purchased with the funds for TF Corporation. In addition, Tomas never required Ana Maria to provide him with an accounting, nor is there evidence in his records that he included these funds or properties among his assets. Since he was a sophisticated businessman, one would reasonably expect that he would have kept balance sheets or other similar records reflecting such holdings.

From this evidence, a factfinder could reasonably infer that Tomas intended Ana Maria and her husband to be the beneficial owners of TF Corporation. By authorizing the transfer of funds to their wholly-owned corporation, it could be inferred that Tomas was authorizing a gift to Ana Maria and her husband. This inference is further supported by a thank you letter Ana Maria alleges she wrote to her father on January 30, 1995, shortly after the first

withdrawal of funds.[4] The letter reflects Ana Maria's early belief that Tomas was putting the shares in her and her husband's names for the benefit of her and her family. The letter suggests that Tomas acted in such a way or made statements that caused the Korugas to believe he intended for them to have beneficial ownership. Under these circumstances, summary judgment for the Estate was inappropriate. *Orin v. Barclay*, 272 F.3d 1207 (9th Cir.2001) (stating that, in considering a motion for summary judgment, all reasonable inferences are to be drawn in favor of the nonmoving party).

### III.

#### Statute of Limitations

The applicable statute of limitations is three years. Wash. Rev.Code § 4.16.080. The Korugas maintain that the Estate must lose because suit was not brought within three years of the injury. Tomas died on June 9, 1996. The Estate filed suit in June 8, 1999, more than three years after Ana Maria withdrew the funds but less than three years after Tomas's death.

In Washington, the discovery rule applies to statutes of limitations when there is a delay between the injury and plaintiff's first discovery of it. *See Crisman v. Crisman*, 85 Wash.App. 15, 931 P.2d 163, 165–66 (Wash.Ct.App.1997) (explaining that the discovery rule "operates to toll the date of accrual until the plaintiff knows or, through the exercise of due diligence, should have known all the facts necessary to establish a legal claim"). Under the discovery rule, Tomas's claim against the Korugas did not accrue until he discovered, or should have discovered, that the

Korugas were asserting ownership over the funds.

There is admissible evidence suggesting that Tomas was aware that the Korugas claimed beneficial ownership prior to his death. According to the testimony of Christina de la Fuente, Tomas not only knew of but also authorized the transfer of the funds in the SeaFirst account to TF Corporation, and he authorized all of the shares of TF Corporation to be registered in the names of Ana Maria and her husband. Tomas offered no compensation to Ana Maria and her husband for their work for TF Corporation, he asked the Korugas for no accountings, and he did not include these funds or properties among his assets. From this evidence, a factfinder could reasonably infer that Tomas knew or should have known that the Korugas believed they had beneficial ownership and, in fact, contributed to that belief. Viewing the evidence in the light most favorable to the Korugas, there are genuine issues of material fact as to the statute of limitations defense precluding summary judgment. *Devereaux*, 263 F.3d at 1074.

### IV.

#### Equitable Estoppel

The Korugas also contend that the plaintiff should be equitably estopped from arguing that Tomas did not make a valid gift. The elements of equitable estoppel are: (1) an act or admission by the first party that is inconsistent with a later assertion; (2) an act by another party that is in reliance on the first party's act; and (3) an injury that would result to the relying party if the first party were not estopped from repudiating the original act or admission. *State, Dept. of Ecology v.*

---

4. The letter is admissible. *See Thor,* 817 P.2d at 1387 (stating that the deadman's statute "does not bar documentary evidence, although it may limit testimony about the documents").

*Campbell & Gwinn, L.L.C.,* 146 Wash.2d 1, 43 P.3d 4, 14 (Wash.2002). The district court found that there was no admissible evidence of an act or admission by Tomas that was inconsistent with the claim that the funds remained his.

As discussed above, there is admissible evidence that Tomas told the Korugas to use the funds to purchase property in the name of TF Corporation and that he directed that all the shares of TF Corporation be registered in the names of Ana Maria and her husband. He never asked the Korugas for an accounting. The thank you letter Ana Maria wrote to her father soon after her first withdrawal of funds indicates that these acts caused her to believe from the beginning that these funds belonged to her. This evidence suggests that Tomas's acts were inconsistent with the Estate's position that he expected the funds to remain his.

There is also evidence that Tomas had a practice of registering stock in other people's names but retaining beneficial ownership. To the extent he could legally retain beneficial ownership of TF Corporation or the property purchased by TF Corporation, his acts may not have been inconsistent with the claim that no gift was made. This boils down to a factual dispute over whether the Korugas should have known that Tomas intended to retain beneficial ownership of TF Corporation. A jury should decide this issue.

There is also admissible evidence that the Korugas acted in reliance on Tomas's acts: they invested the money in an enterprise to which they have devoted much time and energy, an assisted living facility, and they have received no compensation for their work. They also took out a construction loan for $6.4 million to develop the assisted living facility in reliance on Tomas's gift. Finally, there is evidence that the Korugas will be injured if the Estate is not estopped from repudiating the gift. In Ana Maria's declaration, she states that if she and her husband were forced to return any portion of the funds her father gave her, they would stand to lose everything they have invested in the assisted living facility they developed. A jury should assess the credibility of the Korugas' evidence with regard to these elements. Thus, summary judgment as to the Korugas' equitable estoppel defense was inappropriate.

V.

Conclusion

We agree with the district court that the Washington deadman's statute rather than the Philippine deadman's statute applies in this case, and we leave it to the district court to decide in the first instance whether the Estate has waived the deadman's statute. We reverse and remand with respect to the Estate's claim that Tomas did not make a gift to the Korugas and with respect to the Korugas' statute of limitation and equitable estoppel defenses. In light of this holding, the Estate's cross-appeal regarding prejudgment interest is moot.

REVERSED AND REMANDED.