ESTATE OF Tomas B. AGUIRRE, a probate estate, by and through Albert C. AGUIRRE, Special Administrator, Plaintiff—Appellant,

v.

Christopher T. KORUGA; Ana Maria Koruga, husband and wife, and the marital community comprised thereof; Koruga and Associates, a Washington corporation; Topman Seattle Corporation, a Washington corporation; Topman Fellow Corporation, a Washington corporation; The Aguirre Foundation, a Washington corporation, Defendants—Appellees.

No. 04-35411.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 13, 2005.

Decided Nov. 18, 2005.

AlarcÓn, Circuit Judge, filed a dissenting opinion.

Anthony J.W. Gewald, Esq., Lasher Holzapfel Sperry & Ebberson, Seattle, WA, for Plaintiff-Appellant.

Alan Jay Wenokur, Esq., Law Offices, Seattle, WA, Robert S. Banks, Jr., Esq., Banks Law Office, P.C., Portland, OR, for Defendants-Appellees.

Before: SCHROEDER, Chief Judge, ALARCÓN and KLEINFELD, Circuit Judges.

MEMORANDUM *

This protracted litigation arises out of a family dispute over more than four million

* This disposition is not appropriate for publication and may not be cited to or by the courts

dollars. When it was before a panel of this court in 2002, we held that, although the power of attorney granted to Defendant–Appellee, Ana Maria Koruga, did not expressly state that she was granted the power to make gifts, under Washington law, the court could consider extrinsic evidence that the grantor intended to convey that power. *See Estate of Aguirre ex rel. Aguirre v. Koruga*, 42 Fed.Appx. 73 (9th Cir.2002).

Pursuant to that decision, the district court conducted a jury trial. The jury apparently concluded there was a power to make gifts, because it entered a verdict in favor of the Korugas and against the Plaintiff–Appellant, Estate of Aguirre. The jury was instructed to consider the extrinsic evidence pursuant to the parties' stipulated instruction. This second appeal followed that jury verdict.

The Estate argues essentially that the district court had it right the first time in ruling in favor of the Estate and against the Korugas, relying on the language of the power of attorney. The Estate contends that the Washington power of attorney statute supports its view. *See* RCW § 11.94.050 ("Although a designated attorney in fact or agent has all powers of absolute ownership of the principal, or the document has language to indicate that the attorney in fact or agent shall have all the powers the principal would have if alive and competent, the attorney in fact or agent shall not have the power ... unless specifically provided otherwise in the document: ... to make any gifts of property owned by the principal.").

We have already ruled against the Estate. The issue before us, therefore, is whether this case fits within the narrow exceptions to the established doctrine that a panel must follow the law of the case

of this circuit except as provided by 9th Cir.

decided by a previous panel. *See In re Rainbow Magazine, Inc.*, 77 F.3d 278, 281 (9th Cir.1996). The first issue thus becomes whether the prior panel's decision was clearly erroneous. The prior panel relied on *Estate of Lennon v. Lennon*, 108 Wash.App. 167, 29 P.3d 1258 (Wash.Ct. App.2001), a decision of the Washington State Court of Appeals, which remains the only authoritative Washington state court decision on the issue. The Appellant contends that the language that appears to support the prior panel opinion is not the holding of the case and that this panel is free to disregard both the language and the prior panel's opinion.

Regardless of whether we would have reached the same decision as the original panel, we cannot say that its decision was clearly erroneous. The prior panel was not so clearly mistaken in its interpretation of the Washington law as to defeat the law of the case. The Washington decision states:

> Here, Elsie was the sole depositor of funds into the account and there is no evidence indicating an intent to transfer a present interest in the funds to Roger. The power of attorney executed by Elsie did not grant Roger the power to make gifts. Roger does not deny that the checks were written two days before Elsie's death. Therefore, Roger had no authority to write the Christmas checks *unless he can introduce evidence that Elsie specifically instructed him to do so.*

*Estate of Lennon*, 29 P.3d at 1267 (emphasis added).

In view of the already lengthy history of this case, we decline Appellant's suggestion that we certify this case to the Wash-

R. 36–3.

ington Supreme Court for a more authoritative interpretation of the issue.

AFFIRMED.

ALARCÓN, Circuit Judge, dissenting.

I respectfully dissent.

### Prefatory Statement

Under compulsion of the unpublished decision in *Estate of Aguirre v. Koruga,* 42 Fed.Appx. 73 (9th Cir.2002) (*"Aguirre I"*), the district court permitted the jury to consider extrinsic evidence, including oral testimony, that prior to his death, Ana Maria Koruga's father, Tomas B. Aguirre, authorized her to make a gift of $4,185,500 from his bank account. The three-judge panel's interpretation of Washington law in *Aguirre I* was clearly erroneous. Thus, we are not bound by the law of the case doctrine in interpreting RCW § 11.94.050.

Under RCW § 11.94.050, an attorney in fact, or an agent, is prohibited from making a gift of a principal's property unless that authority is expressly provided in a written power of attorney. Because the power of attorney executed by her father did not specifically provide that Mrs. Koruga was authorized to make a gift of money from his bank account, the district court's judgment must be reversed. The judgment is contrary to the clearly expressed intent of the legislature of the State of Washington in RCW § 11.94.050 to protect a deceased or disabled principal from unauthorized gifts of his or her property.

### I

The facts in this case are not in dispute. The matter is before this Court a second time because a different three-judge panel held in *Aguirre I* that Washington case law "indicates" that an attorney in fact, or an agent, may make a gift to herself, notwithstanding the restrictions in RCW § 11.94.050 that such authority is prohibited unless it is expressly provided for in the power of attorney document.

The record shows Tomas B. Aguirre opened a bank account on September 23, 1994, in the Seafirst National Bank in his name, and that of Christina de la Fuente, his executive assistant. Mr. Aguirre and Ms. de la Fuente executed a durable power of attorney giving his daughter, Mrs. Koruga, the authority to withdraw funds from Mr. Aguirre's Seafirst account. The power of attorney did not confer upon Mrs. Koruga the authority to make gifts of Tomas B. Aguirre's money or property.

Mrs. Koruga created the Topman Fellow Corporation on December 23, 1995 to hold title to properties purchased for Mr. Aguirre. Prior to Mr. Aguirre's death on June 9, 1996, Mrs. Koruga withdrew all the funds in Mr. Aguirre's Seafirst account and placed them in the Topman Fellow Corporation's bank account.

After Tomas B. Aguirre's funeral, Mrs. Koruga informed her brother, Albert C. Aguirre, the personal representative of the Estate of Tomas G. Aguirre ("the Estate"), that their father had made a gift of the money in the Seafirst account to her.

Albert C. Aguirre filed an action against Mrs. Koruga on behalf of the Estate for the return of the $4.5 million their father had deposited in the Seafirst account. The Estate alleged that Mrs. Koruga exceeded her authority under the power of attorney in making a gift to herself and her family.

On August 3, 2000, the district court granted the Estate's Motion for Summary Judgment in part, ruling that Mrs. Koruga's gifts from the Seafirst bank account were invalid "[b]ecause the powers of attorney granted to Ms. Koruga did not specifically authorize her to give away To-

mas' money, either to herself or to others, such gifts exceeded her powers."

After additional briefing, and the voluntary dismissal of certain claims by the Estate, the district court entered summary judgment on January 4, 2001 against Mrs. Koruga in the amount of $6,166,149.72. Both sides appealed. In *Aguirre I*, the three-judge panel reversed the Order granting summary judgment in favor of the Estate.

Upon remand, Mrs. Koruga presented extrinsic evidence that her father authorized her to make a gift of $4,185,500 from his Seafirst bank account. She did not produce a power of attorney, however, that expressly provided that she could make a gift. The jury found her testimony credible and returned its verdict in favor of Mrs. Koruga. The district court entered judgment in favor of Mrs. Koruga. This appeal followed.

## II

In this appeal, the Estate has requested that we reverse the district court's judgment because RCW § 11.94.050 expressly prohibits an attorney in fact or an agent to make a gift of property owned by the principal "unless specifically provided otherwise in the [power of attorney] document." Appellant's Br. at 30. Mrs. Koruga argues that we should affirm the judgment because "[t]his Court's decision in *Estate of Aguirre* establishes the law of the case." Appellee's Br. at 14.

In *Aguirre I*, the three-judge panel held that "when there is evidence that the specific gift was authorized by the principal, the policy behind section 11.94.050 of protecting the principal does not apply." *Aguirre I*, 42 Fed. Appx. at 77. In reaching this conclusion, the *Aguirre I* panel held that when extrinsic evidence is presented showing that a principal specifically authorized an attorney in fact, or an agent,

to make a gift to himself or herself, "section 11.94.050 does not render the gift invalid." *Id.* The *Aguirre I* panel cited *Estate of Lennon v. Lennon* ("*Estate of Lennon*"), 108 Wash.App. 167, 183, 29 P.3d 1258 (Wash.Ct.App.2001) for this proposition.

The question presented to the Washington Court of Appeals in *Estate of Lennon* was whether the deadman's statute, RCW § 5.50.030, had been waived by the estate regarding separate transactions concerning (1) the proceeds of a stock sale, and (2) gifts the attorney in fact made from funds in his mother's bank account. *Id.* at 170–71, 29 P.3d 1258.

Section 5.60.030 provides that

> in an action or proceeding where the adverse party sues or defends as executor administrator or legal representative of any deceased person ... a party in interest, or to the record, shall not be admitted to testify in his or her own behalf as to any transaction had by him or her with, or any statement made to him or her, or in his or her presence, by any such deceased....

In *Estate of Lennon*, The Washington Court of Appeals held that "the estate waived the deadman's statute with respect to the stock transaction but not the gift checks." *Estate of Lennon*, 108 Wash. App. at 171, 29 P.3d 1258. The court "reverse[d] summary judgment regarding the stock certification, and affirm[ed] regarding the gift checks." *Id.* The court explained its holding regarding the purported gift of the funds in the decedent's bank account as follows: "[A]n attorney-in-fact has no power 'to make any gifts of property owned by the principal' unless the document specifically provides otherwise." *Id.* at 183, 29 P.3d 1258 (citing RCW § 11.94.050(1)).

Unfortunately, the *Estate of Lennon* court also included the following ambiguous language in its opinion:

The power of attorney executed by Elsie did not grant Roger the power to make gifts. Roger does not deny that the checks were written two days before Elsie's death. Therefore, Roger had no authority to write the Christmas checks unless he can introduce evidence that Elsie specifically instructed him to do so.

But, unlike the deposition testimony regarding the stock certificates, here the estate redacted all testimony that might be construed as a transaction. Therefore, the deadman's statute remains in force as to this court and Roger is barred from testifying that Elsie instructed him to write the Christmas checks. Consequently, Roger has not provided enough admissible evidence on this issue to create a question of material fact, and summary judgment was properly granted to the estate on this issue.

*Id.* at 183, 29 P.3d 1258.

The Washington Court of Appeals did not indicate in the *Estate of Lennon* what type of evidence would be admissible to create a question of material fact, nor did it cite any authority for its obiter dictum.

The court did not hold, however, in the *Estate of Lennon* that a waiver of the deadman's statute permits the introduction of extrinsic evidence to show an attorney in fact, or an agent, can make a gift if that authority is not expressly provided in the power of attorney document. One possible interpretation of the court's casual comment regarding "admissible evidence" is that extrinsic evidence of a decedent's donative intent is admissible where the deadman's statute is waived by the estate, and such proof will be sufficient to uphold a gift by an attorney in fact, or an agent, even though the power of attorney does not specifically authorize it. The analytical problem with this interpretation of the court's obiter dictum is that the Washington Court of Appeals did not follow or discuss relevant opinions of that state's highest court, and it is directly contrary to RCW 11.94.050. Another plausible explanation of the court's commentary in the *Estate of Lennon* is that it was required to affirm the summary judgment because the attorney in fact did not produce admissible evidence of the existence of a power of attorney that expressly authorized him to make a gift.

In *Aguirre I*, the three-judge panel did not state whether it construed the *Estate of Lennon* court's suggestion that extrinsic evidence is admissible to authorize a gift by an attorney in fact was a new rule or merely obiter dictum. Instead, the *Aguirre I* panel commented that "[t]he district court did not have the benefit of a recent opinion of the Washington Court of Appeals which *indicates* that if Tomas specifically authorized Ana Maria to make a gift to herself, section 11.94.050 does not render the gift invalid." *Aguirre I*, 42 Fed. Appx. at 77 (emphasis added). Relying on this *indication* in the *Estate of Lennon,* the *Aguirre I* panel held that "[t]he district court erred in concluding that the evidence of [Tomas B. Aguirre's] intent did not matter." *Id.* Accordingly, it reversed the Order granting summary judgment to the Estate and remanded for a trial on the question of whether the Estate waived the deadman's statute, and whether Mrs. Koruga could produce extrinsic evidence that Tomas B. Aguirre made a gift to Mrs. Koruga and her family. *Id.* at 70.

### III

Relying solely on the law of the case doctrine, the majority has affirmed the

judgment because, "[r]egardless of whether we would have reached the same decision as the original panel, we cannot say that its decision was clearly erroneous. The prior panel was not so clearly mistaken in its interpretation of the Washington law as to defeat the law of the case." Majority Opinion at ——. I respectfully disagree with the majority's conclusion that we are bound by the law of the case.

The "law of the case is a discretionary doctrine." *Jeffries v. Wood*, 114 F.3d 1484, 1489 (9th Cir.1997). A decision on the merits of an issue in a prior appeal should not be followed if "the decision is clearly erroneous and its enforcement would work a manifest injustice." *Hegler v. Borg*, 50 F.3d 1472, 1475 (9th Cir.1995). The *Aguirre I* panel erred as a matter of law in applying obiter dictum from an intermediate appellate court in *Estate of Lennon* instead of following the rule concerning purported gifts by an attorney in fact, or an agent, set forth in decisions of the Supreme Court of Washington, and the plain language of RCW § 11.94.050, as required by *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

The United States Supreme Court instructed in *Erie* that federal courts, in exercising jurisdiction in diversity of citizenship cases,

> [e]xcept in matters governed by the Federal Constitution by Acts of Congress, the law to be applied in any case is the law of the State. And whether the law of the State shall be declared by its Legislature in a statute or by its highest court in a decision is not a matter of federal concern.

304 U.S. at 78.

Under the *Erie* Doctrine, we must apply a state's law as the state's highest court would apply it. *Chemstar, Inc. v. Liberty Mut. Ins. Co.*, 41 F.3d 429, 432 (9th Cir.

1994). "Although [state intermediate] appellate courts' decisions are persuasive precedent, the panel is not bound by them if it believes that the [state's highest] Court would decide otherwise." *Id.*

"The task of a federal court in a diversity action is to approximate state law as closely as possible in order to make sure that the vindication of the state right is without discrimination because of the federal forum." *Gee v. Tenneco, Inc.*, 615 F.2d 857, 861 (9th Cir.1980) (citing *Douglass v. Glenn E. Hinton Investments, Inc.*, 440 F.2d 912, 915 (9th Cir.1971)). In the event there is no decision by the highest court of the state on a given issue of State law, "then federal authorities must apply what they find to be the state law after giving 'proper regard' to relevant rulings of other courts of the State." *Estate of Bosch*, 387 U.S. at 465.

"[U]nder some conditions, federal authority may not be bound even by an intermediate state appellate court ruling." *Id.* In *West v. American Tel. & Tel. Co.*, 311 U.S. 223, 237, 61 S.Ct. 179, 85 L.Ed. 139 (1940), the Supreme Court stated that intermediate state appellate court decisions are not binding upon a federal court if the federal court is "convinced by other persuasive data" the state's highest court would decide the issue otherwise. "It is the duty of federal courts to ascertain from all the available data what the state law is." *West*, 311 U.S. at 237; *see Community Nat. Bank v. Fidelity & Deposit Co.* 563 F.2d 1319, 1321 (9th Cir.1977); *Estrella v. Brandt*, 682 F.2d 814, 817 (9th Cir.1982); *American Triticale, Inc. v. Nytco Services, Inc.*, 664 F.2d 1136, 1143 (9th Cir.1981). Expounding on this rule, the Third Circuit Court of Appeals has held that "a federal court attempting to forecast state law must consider relevant state precedents, analogous decisions, *considered dicta*, scholarly works, *and any other reliable*

*data* tending convincingly to show how the highest court in the state would decide the issue at hand." *McKenna v. Ortho Pharmaceutical Corp.,* 622 F.2d 657, 662–663 (3d Cir.1980) (emphasis added).

It is well established that "considered *dicta*" should not be ignored by a federal court in a diversity case where the state's highest court has not spoken. *Id.; Nolan v. Transocean Air Lines,* 365 U.S. 293, 296, 81 S.Ct. 555, 5 L.Ed.2d 571 (1961); *Gee v. Tenneco, Inc.,* 615 F.2d 857, 861 (9th Cir.1980). For example, in *Losacco v. F.D. Rich Constr. Co.,* 992 F.2d 382 (1st Cir.1993), the First Circuit held that the district court did not err in relying on "considered *dicta*" from two intermediate state appellate court decisions because the "[t]here is no indication that the highest court of Massachusetts would define just cause differently." *Id.* at 384. Here, however, there is a strong indication in decisions of the Supreme Court of Washington that it would come to a different result in construing RCW § 11.94.050.

The Washington Court of Appeals in *Estate of Lennon* did not cite or discuss the Supreme Court of Washington's decision in *Bryant v. Bryant.* In *Bryant,* the court ruled that a power of attorney "will be held to grant only those powers which are specified, and the agent may neither go beyond nor deviate from the express provisions." *Id.* 125 Wash.2d 113, 882 P.2d 169, 171 (1994). Because *Estate of Lennon* was inconsistent with this holding, it is unlikely the Supreme Court of Washington would follow it. Accordingly, the dicta in *Estate of Lennon* is not the type of "considered" dicta that is useful in predicting how the Supreme Court of Washington would rule on comparable facts.

The Supreme Court of Washington has held that "[s]tatements in a case that do not relate to an issue before the court and are unnecessary to decide the case are

obiter dictum and need not be followed." *Association of Washington Business v. State of Washington Department of Revenue,* 155 Wash.2d 430, 120 P.3d 46, 51 n. 11 (2005) (quoting *State v. Potter,* 68 Wash. App. 134, 150 n. 7, 842 P.2d 481 (1992)). In the same opinion the Supreme Court of Washington also stated: "Even if the language is not dicta, it is questionable in light of the statute's plain meaning." *Id.* Thus, the *Aguirre I* panel was not compelled to follow the dicta in *Estate of Lennon.*

The *Aguirre I* panel's reliance on *Estate of Lennon* is further undermined by the fact that the Washington Court of Appeals' decision in that matter was not appealed to the state's highest court. In *Ogden Martin Systems, Inc. v. San Bernardino County,* 932 F.2d 1284 (9th Cir.1991), we noted that "[w]e are less strictly compelled to follow intermediate appellate decisions when these decisions have not been appealed to the state's highest court." *Id.* at 1289. Therefore, assuming arguendo that the indication in *Estate of Lennon* was intended to be a holding, the *Aguirre I* panel was not compelled to follow it because it was not appealed to the Supreme Court of Washington. In *Ogden Martin Systems,* we also declined to apply the holding of a California intermediate appellate court "because we believe[d] such a result would conflict with California's statutory scheme for enforcing its franchise tax laws." *Id.* at 1289. Here, enforcing the obiter dictum in *Estate of Lennon* would undermine the Washington Legislature's scheme for protecting principals from the making of unauthorized gifts by their agents.

Furthermore, the statement in *Aguirre I* that the "policy behind section 11.94.050 of protecting the principal does not apply" where there is "evidence that the specific gift was authorized by the principal" is

also clearly erroneous. "Public policy is to be ascertained by reference to laws and legal precedents and not from general considerations of supposed public interests." *Muschany v. United States,* 324 U.S. 49, 66, 65 S.Ct. 442, 89 L.Ed. 744 (1945) (citing *Vidal v. Philadelphia,* 2 How. 127, 197–98, 11 L.Ed. 205 (1844)). "If a policy exists it may be used to resolve an uncertainty of law but it cannot override a statute." *Harris v. Harris,* 424 F.2d 806, 811 (D.C.Cir.1970) (citing *Muschany v. United States,* 324 U.S. 49, 65 S.Ct. 442, 89 L.Ed. 744 (1945)). When a statute is "plain and unambiguous" and there is no evidence of a contrary purpose than the purpose appearing in the precise terms of the statute "it transcends the judicial function to rewrite the statute to conform to considerations of policy." *Manufacturers Hanover Trust Co. v. Commissioner,* 431 F.2d 664, 668 (2d Cir.1970) (citing *Iselin v. United States,* 270 U.S. 245, 250–51, 46 S.Ct. 248, 70 L.Ed. 566 (1926)).

The policy that motivated the Washington Legislature to enact RCW § 11.94.050 is unmistakable. It guards against the risk that an attorney in fact will abuse his or her fiduciary responsibility to the principal by engaging in self-dealing. This danger is particularly acute with respect to durable powers of attorney. A principal who executes a durable power of attorney often will be incapable of testifying concerning the authority he or she intended to convey to the attorney in fact. *See Note: License to Steal: Implied Gift–Giving Authority and Powers of Attorney,* 4 Elder L.J. 143, 167 (1996) ("the abuse of powers of attorney has been called an 'invisible epidemic' because the victims, who are usually elderly or incapacitated, may be unaware of what is happening or too frightened or embarrassed to raise any formal objections which would bring the case to light."). A bright-line rule, such as that set forth in § 11.94.050, largely elimi-

nates an attorney in fact's opportunity to engage in self-dealing, although at the expense of sometimes frustrating a principal's intent. As the Fourth Circuit Court explained:

> When one considers the manifold opportunities and temptations for self-dealing that are opened up for persons holding general powers of attorney—if which outright transfers for less than value to the attorney-in-fact are the most obvious—the justification for such a flat rule is apparent. And its justification is made even more apparent when one considers the ease with which such a rule can be accommodated by principals and their draftsmen.

*Estate of Casey v. Comm'r,* 948 F.2d 895, 898 (4th Cir.1991).

The policy of protecting the principal from self-dealing by the attorney in fact is not alleviated simply because the attorney in fact presents extrinsic evidence that a specific gift was authorized by the principal. Indeed, the very purpose of a bright line rule requiring that the authority to make gifts be expressly conferred by the written instrument creating the power is to *prevent* attorneys in fact from introducing such extrinsic evidence.

As discussed above, § 11.94.050 provides that *if* a principal wishes to confer upon an attorney-in-fact the authority to make gifts of the principal's property, the principal must specifically provide such authority in the language of the instrument. It is axiomatic that statutes cannot be interpreted to negate their purpose. *New York State Dept. of Social Services v. Dublino,* 413 U.S. 405, 419–20, 93 S.Ct. 2507, 37 L.Ed.2d 688 (1973). But that is precisely what the majority has done in the instant case. Pursuant to the majority's opinion, it is no longer necessary for a principal to provide

specific authority to make gifts in a power of attorney.

Finally, the language of RCW § 11.94.050 is unambiguous. "When the statute's language is plain, the sole function of the courts is to enforce it according to its terms." *Pope & Talbot, Inc. v. Comm'r*, 162 F.3d 1236, 1238 (9th Cir.1999) (quotation marks omitted); *Washington v. Watson*, 146 Wash.2d 947, 51 P.3d 66, 69 (Wash.2002) ("If a statute is clear on its face, its meaning is to be derived from the plain meaning of the statute alone."). Section 11.94.050 expressly provides that an attorney in fact lacks the authority to make gifts of the principal's property unless that authority is "specifically provided ... in the document" creating the power of attorney. This Court's holding in *Aguirre I* that the Korugas could introduce extrinsic evidence indicating Mr. Aguirre authorized Mrs. Koruga to make gifts of his property is clearly erroneous because it is contrary to the plain language of the Washington statute.

## IV

The *Aguirre I* panel clearly erred in failing to apply the United States Supreme Court's *Erie* Doctrine and the law of this Court concerning the rules of decision in diversity jurisdiction actions for the following reasons:

One. The *Aguirre I* panel failed to apply the dispositive decision in *Bryant* wherein the Supreme Court of Washington held that an attorney in fact or an agent "may neither go beyond nor deviate from the express provisions of a power of attorney" document. *Bryant*, 882 P.2d at 171.

Two. The *Aguirre I* panel based its opinion on a casual observation or in *Estate of Lennon* which was contrary to the bright-line decision of the Supreme Court of Washington in *Bryant* regarding the re-

quirement to enforce powers of attorney strictly. *Bryant*, 882 P.2d at 171. ·

Three. The *Aguirre I* panel failed to follow this Court's decision in *Ogden Martin Systems* by basing its decision solely on an intermediate appellate court's decision that had not been appealed to the Supreme Court of Washington. 932 F.2d at 1289.

Four. The *Aguirre I* panel erroneously relied upon obiter dictum in *Estate of Lennon* which nullifies the policy that motivated the Washington Legislature to enact RCW § 11.94.050 to prevent agents from committing fraud by presenting extrinsic evidence that their dead or incapacitated principals orally authorized them to make gifts.

Five. The *Aguirre I* panel's decision is contrary to the plain meaning of RCW § 11.94.050.

Regrettably, instead of discussing and applying relevant authority from the highest court in the State of Washington, as compelled by the *Erie* Doctrine, the majority is apparently content to dispose of the serious questions in this matter involving over six million dollars on the ground that "[t]he prior panel was not so clearly mistaken in its interpretation of Washington law as to defeat the law of the case." I disagree. I would hold that the *Aguirre I* panel clearly erred as a matter of law in failing to apply the bright-line rule in the Supreme Court of Washington's *Bryant* decision that an attorney in fact, or an agent, may not make a gift unless the power of attorney document expressly authorizes it.

## V

The majority has summarily declined the Estate's request for certification so that the Supreme Court of Washington can instruct us whether it will adopt the obiter

dictum in *Estate of Lennon* that extrinsic evidence may be introduced to show that a gift was authorized, notwithstanding the requirement in RCW § 11.94.050 that an attorney in fact, or an agent, cannot make a gift unless that authority is expressly provided for in the power of attorney document. Instead the majority has rejected the request for certification based on its conclusion that the *Aguirre I* panel did not clearly err in applying the obiter dictum in *Estate of Lennon* because it is "the only authoritative Washington state court decision on the issue," Majority Opinion at page ——, and "in view of the already lengthy history of this case." Majority Opinion at page ——. I would not characterize the obiter dictum in *Estate of Lennon* as "authoritative." It is unsupported by analysis or citation to relevant decisions of the state's highest court. In applying the law of the case doctrine, the majority has failed to consider where the *Erie* doctrine compels us to apply the bright-line principle announced by the Supreme Court of Washington in *Bryant* that an attorney in fact, or an agent, "may neither go beyond nor deviate from the express provisions" of a power of attorney document. 882 P.2d at 171. I am persuaded that the Supreme Court of Washington would not overturn its own decision in *Bryant* in favor of the casual suggestion in *Estate of Lennon* that extrinsic evidence can excuse noncompliance with RCW § 11.94.050.

I would not penalize the Estate because of "the already lengthy history of this case." The delay in this case has resulted from the failure of the *Aguirre I* panel to cite or apply the Supreme Court of Washington's dispositive opinion in *Bryant* in considering Mrs. Koruga's appeal from the order of the district court granting sum-

mary judgment to the Estate. Had the *Aguirre I* panel followed the *Bryant* decision, instead of relying on the obiter dictum of the Washington Court of Appeals in *Estate of Lennon*, this case would have been finally decided over three years ago on June 16, 2002, the filing date of the *Aguirre I* panel's unpublished opinion.

Because the *Aguirre I* panel clearly erred in failing to apply the law of Washington as reflected in the decision of that state's highest court, the law of the case doctrine is inapplicable. Accordingly, I would also reject the request for certification. Instead, I would reverse the judgment with instructions that the district court enter an appropriate money judgment in favor of the Estate.